

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
09/07/2016

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **JOHN W. SINCLAIR and LINDA L.** | § | **Case No. 11-34564** |
| **SINCLAIR,** | § | |
| | § | **Chapter 13** |
| Debtors. | § | |

### MEMORANDUM OPINION REGARDING DEBTOR JOHN W. SINCLAIR'S: (1) MOTION TO FILE NON STANDARD MOTION FOR ENTRY OF CHAPTER 13 DISCHARGE; AND (2) NON-STANDARD MOTION FOR ENTRY OF DISCHARGE FOR MR. SINCLAIR
[Doc. Nos. 89 & 90]

### I.  INTRODUCTION

Another BAPCPA provision now presents a challenging analysis for this Court.[1]  It involves statutory rape.

John W. Sinclair ("Mr. Sinclair") and Linda L. Sinclair ("Ms. Sinclair") (collectively, the "Debtors") filed their Chapter 13 petition on May 31, 2011.  Thereafter, this Court confirmed their Chapter 13 plan, and the Debtors made all of their plan payments.  The Debtors have also taken the required financial management course, and filed the appropriate certificate on May 23, 2016.  Thus, they have fulfilled the fundamental requirements to obtain a discharge.

But, there is a rub.  11 U.S.C. § 1328(h)(2),[2] in pertinent part, only permits this Court to grant a discharge if it finds "that there is no reasonable cause to believe that . . . there is pending any proceeding in which the debtor may be found . . . liable for a debt of the kind described in section 522(q)(1)(B)."  Section 522(q)(1)(B)(iv) describes certain types of debts, including "a

---

[1] In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act, which is now known as BAPCPA. *See* BAPCPA of 2005, Pub. L. No. 109-8, 119 Stat. 23.

[2] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.  Further, any reference to a "Rule" is a reference to the Federal Rules of Bankruptcy Procedure.

debt arising from . . . any criminal act . . . that caused serious physical injury or death to another individual in the preceding 5 years." Read together, these two provisions only permit this Court to grant a discharge if the Court finds that there is no reasonable cause to believe that the Debtors can somehow become liable for a debt arising from a criminal act.

In the case at bar, this Court finds that it has reasonable cause to believe that a debt could arise from an existing criminal proceeding against Mr. Sinclair for his sexual relationship with a certain minor child (discussed more at length herein); and as such, this Court cannot grant him a discharge.[3]

The Court now makes the following Findings of Fact and Conclusions of Law pursuant to Rules 7052 and 9014. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such; and to the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. Further, this Court reserves the right to make additional findings and conclusions as it deems necessary.

## II.    FINDINGS OF FACT

1. On May 31, 2011 (the "Petition Date"), the Debtors filed a Chapter 13 petition. [Doc. No. 1].

2. On October 17, 2011, this Court confirmed the Debtors' plan. [Doc. No. 49].

3. On March 4, 2013, the parents of a minor child filed an incident report with the Hudspeth County Sheriff's Office (the "Sheriff's Office") concerning Mr. Sinclair's sexual relations with their minor daughter (the "Minor Child"). [Ex. No. 1, p. 6]. The incident report expressly states that Mr. Sinclair engaged in sexual intercourse with the Minor Child on numerous occasions. [Id. at p. 8].

---

[3] This Court does, however, grant Ms. Sinclair's discharge. [Hr'g held on August 25, 2016, at 4:06:16–4:06:23 P.M.]. There is no proceeding presently pending that involves Ms. Sinclair. Hence, § 1328(h)(2), by its own terms, cannot apply to her.

4.  On the same day, the Minor Child submitted to the Sheriff's Office a voluntary
    statement describing the events that occurred with Mr. Sinclair. [*Id.* at pp. 10–15].
    According to her statement, in October 2012, the Minor Child began to visit Mr.
    Sinclair so that she could prepare meals for him. [*Id.* at p. 10]. Mr. Sinclair told the
    Minor Child that she "reminded him of his former wife" and "made him laugh and
    feel good," so the Minor Child visited him almost daily. [*Id.*]. The Minor Child
    expressed that she "didn't want to lose [Mr. Sinclair's] friendship," so she continued
    to visit him after he explained the feelings he had for the Minor Child. [*Id.*]. The
    Minor Child spent the night at Mr. Sinclair's home, and in October 2012, Mr. Sinclair
    kissed the Minor Child. [*Id.*]. On October 23, 2012, the Minor Child celebrated her
    birthday at Mr. Sinclair's barn. [*Id.* at p. 11]. The Minor Child informed Mr. Sinclair
    that she did not have feelings for Mr. Sinclair; in response, Mr. Sinclair requested that
    she stop visiting his home. [*Id.*]. Fearful that Mr. Sinclair would be "unhappy,
    starve, or kill himself," the Minor Child continued to visit and cook for Mr. Sinclair,
    as well as "give [their relationship] another chance." [*Id.*]. Mr. Sinclair repeatedly
    told the Minor Child that "he would probably kill himself" if anything happened to
    the Minor Child. [*Id.* at pp. 10, 12]. Mr. Sinclair told the Minor Child that she was
    "the love of his life and that age didn't make a difference when it came to love,"
    which the Minor Child later came to believe. [*Id.* at p. 12]. The Minor Child felt
    "sorry" for Mr. Sinclair and felt that if she "brought [Mr. Sinclair] so much
    happiness, [she] would never want to take that away," which made her believe she
    was doing the right thing by having sexual relations with Mr. Sinclair because he
    "really cared." [*Id.*].

3

5.  In July 2014, Mr. Sinclair was indicted with a second degree felony of "Indecency with a Child Sexual Contact," a violation of Texas Penal Code § 21.11(a)(1).  The State of Texas specifically indicted him with four counts of sexual assault of "a child younger than 17 years of age."  [*Id.* at pp. 1–5].  Further, the indictment sets forth that the sexual assaults began around November 15, 2012.  [*Id.* at p. 1].  No trial has yet been held, so Mr. Sinclair has not been convicted.  The lawsuit that has resulted from the indictment is styled as follows:  THE STATE OF TEXAS vs. John Sinclair, No. 5648-205th, in the District Court of Hudspeth County, Texas.   (the "Criminal Proceeding") [Ex. No. 2, p.1].

6.  On September 16, 2015, pursuant an order entered in the Criminal Proceeding, a physician conducted an examination of Mr. Sinclair to determine his competency to stand trial.  [Debtor's Ex. No. 5, p. 1].  On October 22, 2015, the examining physician drafted a document entitled "Forensic Psychological Evaluation:  Competence to Stand Trial" (the "Evaluation").  [Ex. No. 5].  The Evaluation found that Mr. Sinclair is incompetent to stand trial.  [*Id.* at p. 4].  The examining physician stated that "there is [a] possibility that Mr. Sinclair is malingering his symptoms, and if so, there would be little cause for a finding of incompetency."  [*Id.*].  Further, according to the Evaluation, the examining physician believes that "Mr. Sinclair can be restored to competency in the foreseeable future [which would] require formal and intensive psychiatric treatment . . . ."  [*Id.* at p. 5].

7.  By May 23, 2016, the Debtors had made all of their required plan payments in their Chapter 13 case, [Doc. No. 82], taken the required financial management course,

4

[Doc. Nos. 80 & 81], and filed the appropriate certificate, [Doc. Nos. 88 & 90], thereby fulfilling the fundamental requirements to obtain a discharge.

8. On June 29, 2016, Ms. Sinclair filed her Debtors' Certification, Motion for Entry of Chapter 13 Discharge, and Proposed Discharge Order (the "Motion for Entry of Discharge for Ms. Sinclair"). [Doc. No. 88]. The Motion for Entry of Discharge for Ms. Sinclair is the standard form motion promulgated by the Southern District of Texas. *See* Bankruptcy Forms & Filing Fees, U.S. DIST. & BANKR. COURT S. DIST. OF TEX., http://www.txs.uscourts.gov/bankruptcy/bankruptcy-forms-filing-fees (allowing access to the form titled "Debtor's Certification and Motion for Entry of Chapter 13 Discharge").

9. On the same day, Mr. Sinclair filed two pleadings. First, he filed a pleading entitled: "Motion to File Non Standard Motion for Entry of Chapter 13 Discharge and Proposed Discharge Order" (the "Motion for Leave to File a Non-Standard Motion"). [Doc. No. 89]. The purpose of filing the Motion for Leave to File a Non-Standard Motion is to seek leave of this Court to allow him to file the a motion requesting a discharge that is not the standard form motion promulgated by the Southern District of Texas. The Motion for Leave to File a Non-Standard Motion expressly states that: "The criminal proceeding currently pending is not of the kind described in section 522(q)(1)(A) nor does it involve any liability for a debt of the kind described in section 522(q)(1)(B)." [*Id.* at p. 2].

10. The second pleading that Mr. Sinclair filed on June 29, 2016 is entitled: "Debtor's Certification, Motion for Entry of Chapter 13 Discharge and Proposed Discharge Order (*Non-Standard*)" (the "Non-Standard Motion for Entry of Discharge for Mr.

Sinclair"). [Doc. No. 90] (emphasis added). It is this particular pleading that Mr. Sinclair, by filing the Motion for Leave to File a Non-Standard Motion, seeks permission from this Court to file. In the Non-Standard Motion for Entry of Discharge for Mr. Sinclair, he makes the exact same representations that his wife makes in her Motion for Entry of Discharge for Ms. Sinclair, with one exception. In paragraph F, whereas Ms. Sinclair—in accordance with the form promulgated by the Southern District of Texas—represents that "No criminal proceeding is pending against me alleging that I am guilty of a felony," [Doc. No. 88], Mr. Sinclair makes the following representation: "No criminal proceeding is pending against me alleging that I am guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B)," [Doc. No. 90]. Thus, read together, Mr. Sinclair's two pleadings—the Motion for Leave to File a Non-Standard Motion and the Non-Standard Motion for Entry of Discharge for Mr. Sinclair (the "Two Motions")—are aimed at convincing this Court to grant him a Chapter 13 discharge without using the standard form, which he is precluded from using due to the existence of the felony indictment pending against him. [*See* Finding of Fact No. 5]. Stated differently, Mr. Sinclair wants this Court to grant him a discharge even though he has been indicted for a felony and faces a trial in the Criminal Proceeding. He takes the position that the felony for which he has been indicted does not fit within the category of misconduct described in § 522(q)(1)(A) or § 522(q)(1)(B), and that therefore, he is entitled to a discharge under § 1328(a).[4]

---

[4] Section 522(q)(1)(A) refers to instances where the debtor has already been convicted of certain felonies. Here, Mr. Sinclair has not yet been convicted; therefore, § 522(q)(1)(A) is inapplicable. Only § 522(q)(1)(B)(iv) comes into play in the case at bar.

11. On July 28, 2016, this Court held a hearing on the Two Motions and also on the Motion for Entry for Discharge for Ms. Sinclair.  At this hearing, Mr. Sinclair testified that he was aware of the criminal charges currently pending against him. [Hr'g held on July 28, 2016, at 6:06:09–6:06:43 PM].  Further, Ms. Sinclair testified that she knew when Mr. Sinclair had engaged in sexual conduct with the Minor Child. [*Id.* at 6:02:56–6:03:20 PM].  The Court continued the hearing until August 25, 2016. [*Id.* at 6:16:11–6:17:31 PM].

12. At the continued hearing on August 25, 2016, counsel for the Debtors opted not to make any additional arguments on behalf of Mr. Sinclair.  [Hr'g held on Aug. 25, 2016, at 4:06:12–4:06:13 P.M.].  The Court then took the Two Motions under advisement.  [*Id.* at 4:06:16–4:06:38 P.M.].  Finally, the Court granted the Motion for Entry for Discharge for Ms. Sinclair.  [*Id.* at 4:06:16–4:06:23 P.M.].

## III.   CONCLUSIONS OF LAW

**A.   Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11."  District courts may, in turn, refer these proceedings to the bankruptcy judges for that district.  28 U.S.C. § 157(a).  In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

The particular issue at bar constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) because the resolution of this matter affects the debtor-creditor relationship:  if

this Court grants the Two Motions, Mr. Sinclair receives a discharge of the debts that he owes to his creditors; whereas, if the Court denies the Two Motions, Mr. Sinclair will still be personally liable for the debts that he owes to his creditors.   Additionally, the issue at bar is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2).   *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").

**B.     Venue**

Venue is proper under 28 U.S.C. § 1408(1) because the Debtors resided in the Southern District of Texas for 180 days prior to the Petition Date.

**C.     Constitutional Authority to Enter a Final Order**

In the wake of the Supreme Court's issuance of *Stern v. Marshall*, 564 U.S. 462 (2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any dispute pending before it.   In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."   *Id.* at 503.   The pending dispute before this Court concerning an exception to discharge is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).   *See also In re Brabham*, 184 B.R. 476, 482 (Bankr. D.S.C. 1995)

8

("[A] Bankruptcy Court should exercise its jurisdiction to determine issues of dischargeability of debts which are brought before it and must consider issues related to enforcement of the discharge injunction of § 524."); *In re Tulloch*, 373 B.R. 370, 375 (Bankr. D.N.J. 2007) ("Exception-to-discharge adversary proceedings are 'core proceedings' arising under title 11 and, as such, bankruptcy judges may 'hear and determine' such matters and 'enter appropriate orders and judgments' therein.").  Because *Stern* is replete with language emphasizing that the ruling is limited to the one specific type of core proceeding involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order here.  A core proceeding under § 157(b)(2)(O) is entirely different than a core proceeding under § 157(b)(2)(C).  *See, e.g., Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also In re Davis*, 538 F. App'x 440, 443 (5th Cir. 2013) *cert. denied sub nom. Tanguy v. W.*, 134 S. Ct. 1002 (2014) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect.' . . . We decline to extend *Stern*'s limited holding herein.").

In the alternative, this Court has the constitutional authority to enter final orders on the Two Motions because Mr. Sinclair has consented, impliedly if not explicitly, to adjudication of this issue by this Court.  *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed.  We disagree.  Nothing in the Constitution requires that

consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").  Indeed, Mr. Sinclair filed the Two Motions in this Court, [Findings of Fact. Nos. 9–10], and proceeded to make a record at a hearing without ever objecting to this Court's constitutional authority to enter a final order on the Two Motions, [*See* Findings of Fact Nos. 11 & 12].  This Court finds that these circumstances constitute consent to this Court entering final orders on the Two Motions.

**D.      Reviewing Whether There is Reasonable Cause to Believe that There is a Pending Proceeding Against Mr. Sinclair Involving a Criminal Act that Comes Within the Universe of Criminal Acts Referred to in § 522(q)(1)(B)(iv)**

In a Chapter 13 case, a debtor may seek a discharge of debts after completing payments required under a confirmed plan and making the appropriate certifications.  11 U.S.C. § 1328(a). In the present case, Mr. Sinclair now seeks to obtain his discharge because he has completed the fundamental requirements for doing so.  [Finding of Fact No. 7].  Before this Court can grant him a discharge, however, it must do an analysis under § 1328(h)(2), which took affect under BAPCPA.  Section 1328(h)(2) allows this Court to grant Mr. Sinclair a discharge only if this Court finds "that there is no reasonable cause to believe that . . . there is pending any proceeding in which [Mr. Sinclair] may be found . . . liable for a debt of the kind described in § 522(q)(q)(B)."  The debts described in § 522(q)(1)(B)(iv) include "a debt arising from . . . any criminal act . . . that caused serious physical injury or death to another individual in the preceding 5 years."  Here, Mr. Sinclair is presently a defendant in the Criminal Proceeding, and the State of Texas seeks his conviction on four counts of sexual assault of "a child younger than 17 years of age."  [Finding of Fact No. 5].  Therefore, to determine if Mr. Sinclair's present situation prevents his discharge, the Court must first examine if the pending alleged crime of sexual assault is a criminal act that falls under § 522(q)(1)(B)(iv).  If it does, then the second

question this Court must answer is whether Mr. Sinclair could incur a debt if convicted, or if he enters into a plea bargain, in the Criminal Proceeding.

      1.     Reviewing Whether Mr. Sinclair's Conduct Fall Within the Conduct Described in § 522(q)(1)(B)(iv)

For the purposes of the case at bar, the first prong requires there to be a pending proceeding involving a criminal act . . . that caused serious physical injury . . . to another individual in the preceding 5 years. § 522(q)(1)(B)(iv). In the present case, Mr. Sinclair was indicted in July of 2014. [Finding of Fact No. 5]. His indictment charges him with "Indecency with a Child Sexual Contact" with four counts of sexual assault, with these assaults beginning around November 15, 2012. [*Id.*]. The indictment specifically sets forth that these incidents of sexual assault occurred between Mr. Sinclair and "a child younger than 17 years of age." [*Id.*]. Further, the State of Texas has initiated a lawsuit against him that is currently pending in Hudspeth County—*i.e.*, the Criminal Proceeding. [*Id.*]. Thus, there is a "pending proceeding" involving Mr. Sinclair for acts occurring within the preceding five years.

It is noteworthy that § 1328(h)(2) does not require **conviction** to bar discharge. *See* 11 U.S.C. § 522(q)(1)(B)(iv) (Westlaw Next 2016) (applying § 1328(h)(2) when debtor's debt arises from any criminal *act*, as opposed to any criminal *conviction*); *see also In re Larson*, 340 B.R. 444, 449–50 (Bankr. D. Mass 2006) ("[T]he phrase 'criminal act' does not require a conviction or a certain level of culpability."). It is merely necessary that the Court has *reasonable cause to believe* that: (1) a criminal act resulting in "serious physical injury" occurred; and (2) there is presently pending a proceeding in which the debtor may be found liable for a debt due to his criminal act. Given that there is a pending proceeding in the case at bar, the question is whether the criminal acts charged against Mr. Sinclair resulted in "serious

11

physical injury" to the Minor Child. The Code contains no definition of "serious physical injury," so this Court must look to non-bankruptcy law to determine the meaning of this phrase.

    2.    <u>Applicable Law Regarding What Constitutes a "Serious Physical Injury"</u>

The Code requires the criminal act to cause "serious physical injury." *See* § 522(q)(1)(B)(iv) (as made applicable by § 1328(h)(2)). While this phrase is not defined in the Code, a definition of a similar phrase—"serious bodily injury"—is provided in the Texas Penal Code.[5] There, "'serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *See* Tex. Penal Code Ann. § 1.07(46) (Westlaw Next 2015). Texas courts find "serious bodily injury" when there is fear of death or serious harm, (*Page v. State*, 819 S.W.2d 883, 888 (Tex. App.—Houston [14th Dist.] 1991, no writ.)); harm that is grave, not fatal, (*Bruce v. State*, 51 S.W. 954, 955 (Tex. Crim. App. 1899, no writ.)); or forced prostitution (*U.S. v. Garcia-Gonzalez*, 714 F.3d 306, 314–315 (5th Cir. 2013)). Moreover, federal courts evaluate the meaning of "serious bodily injury" in determining sentencing enhancements. To do this, courts first look to the indictment to determine if, on its face, the crime charged "presents a serious potential risk of [physical] injury to a person." *See U.S. v. Houston*, 364 F.3d 243, 246 (5th Cir. 2004) (quoting *U.S. v. Charles*, 301 F.3d 309, 314 (5th Cir. 2002)) (internal quotation marks omitted).

In the case at bar, the indictment and the incident report assert that Mr. Sinclair, on several occasions, engaged in sexual conduct with a Minor Child [Findings of Fact Nos. 3 & 5]; however, there is no allegation of serious physical injury to the Minor Child. Nevertheless, a criminal court may well find that Mr. Sinclair's actions *did* involve a serious physical injury to the Minor Child, even though the indictment and the statement from the Minor Child *do not* indicate as such. [*See*

---

[5] This Court sees no material difference between the meaning of the phrase "serious physical injury," as used in § 522(q)(1)(B)(iv), and the phrase "serious bodily injury," as used in Texas Penal Code § 1.07(46).

Findings of Fact Nos. 4 & 5].  This is because statutory rape laws protect minors from negative consequences of sexual activity, such as sexually transmitted diseases or pregnancy, which pose risks of serious physical injury to the victim.  *Michael M. v. Superior Court of Sonoma Cnty.*, 450 U.S. 464, 470 (1981); *see also U.S. v. Sacko*, 103 F. Supp. 2d 85, 90–91 (D.R.I. 2000) (finding that a crime of sexual penetration of a fourteen-year-old female by a male over age eighteen involves conduct presenting a "serious potential risk" of physical injury to female, including sexually transmitted disease and long-term health risks).  Further, case law discusses that the use of force or violence is inherent in the sexual assault of a minor by an adult.  *U.S. v. Kirk*, 111 F.3d 390, 395 (5th Cir. 1997) (finding indecency with a  child to be a crime of violence according to the United States Sentencing Guidelines); *U.S. v. Velazquez-Overa*, 100 F.3d 418, 419, 422 (5th Cir. 1996) (holding that indecency with a child involving sexual contact is *per se* a crime of violence).  As explained below, sexual relations between a minor and a person over eighteen inherently cause a serious physical injury.  Regardless of what the indictment alleges about injuries, courts frequently hold that certain sex offenses—even where force is not used— are necessarily violent crimes because they present a risk of injury to the minor child.

3.     The Fifth Circuit Recognizes Sexual Assault of a Minor by an Adult as *Per Se* a "Serious Bodily Injury"

The Fifth Circuit has held that indecency with a child involving sexual contact under Texas Penal Code § 21.11(a)(1) is a crime of violence as defined by the United States Sentencing Guidelines. *Kirk*, 111 F.3d at 395.  The Fifth Circuit has also found that such a crime is *per se* a crime of violence. *Velazquez-Overa*, 100 F.3d at 419, 422 (describing the child as younger than seventeen in the indictment).  Further, the crime of indecency with a child is used as a sentencing

enhancement because it is considered an aggravated felony—it involves a substantial risk that physical force may be used. *Id.* at 423.

In *Kirk*, the court found that such a crime implicitly involves violence even if the record does not show any actual physical injuries. 111 F.3d at 395. The court analyzed a situation involving an adult who befriended a minor and then used that friendship to abuse the minor. *Id.* The court in *Kirk* discussed how children are physically inferior to and trusting of adults and such superior physical strength from an adult is an inherent threat. *Id.*

Similarly, in the current case before this Court, Mr. Sinclair befriended the Minor Child. [Finding of Fact No. 4]. The Minor Child cooked for Mr. Sinclair, spent the night in his home, and celebrated her birthday at Mr. Sinclair's barn. [*Id.*]. Further, the record shows that the Minor Child became convinced that Mr. Sinclair "really cared" for her, that he would starve or die without her, and that she should "give [their relationship] another chance" because she did not want Mr. Sinclair to be unhappy. [*Id.*]. This scenario hearkens to the situations in *Kirk* and *Velazquez-Overa*: an adult befriends a minor child and through a relationship of "trust," the child believes that sexual conduct is warranted. The Fifth Circuit presumes that such relationships are crimes of violence because of the likelihood that if the minor child does not consent to the sexual act, violence will ensue—or, at least, the child believes that violence will occur. *Velazquez-Overa*, 100 F.3d at 422 ("[W]hen an older person attempts to sexually touch a child . . ., there is always a substantial risk that physical force will be used to ensure the child's compliance.") (quoting *U.S. v. Reyes-Castro*, 13 F.3d 377, 379 (10th Cir. 1993)) (internal quotation marks omitted).

Given the case law cited above, this Court concludes that sexual assault of a minor child constitutes a criminal act that causes serious physical injury to that child. With respect to Mr. Sinclair, the incident report asserts that he had sexual intercourse several times with the Minor

Child, [Finding of Fact No. 3], and this Court therefore finds that these circumstances constitute criminal acts that caused serious physical injury to the Minor Child. It does not matter that there is no allegation that the Minor Child has actually suffered serious physical injury. *Kirk*, *Velazquez-Overa*, and *Reyes-Castro* underscore that statutory rape is a crime of violence as a matter of law. And, this Court finds that as a matter of law, a crime of violence is equivalent to § 522(q)(1)(B)(iv)'s "criminal act . . . [causing] serious physical injury." Thus, this Court finds that Mr. Sinclair's conduct falls within the conduct described in § 522(q)(1)(B)(iv).

However, this finding alone does not bar Mr. Sinclair from receiving a discharge under § 1328(h)(2). This Court must now inquire whether it has reasonable cause to believe that Mr. Sinclair's actions could result in a debt being imposed upon him in the Criminal Proceeding.

E.    **Is there Reasonable Cause to Believe That a Debt Could Arise from the Criminal Proceeding?**

If there is any pending proceeding against the debtor in which the bankruptcy court finds *reasonable cause to believe that the debtor may be found liable for a debt* arising from a criminal act resulting in "serious physical injury," the court cannot grant discharge. *See* 11 U.S.C. § 1328(h)(2) ("The court may not grant a discharge . . . [if the court] finds that there is . . . reasonable cause to believe that . . . there is pending any proceeding in which the debtor may be found liable for a debt [as described] in section 522(q)(1)(B)."); *see also* § 522(q)(1)(B)(iv) (describing, in pertinent part, "any criminal act . . . that caused serious physical injury or death to another individual in the preceding 5 years"). Thus, this Court does *not* have to determine whether, definitively, Mr. Sinclair *will be* liable for a debt; it is enough that this Court determines if, as a result of the Criminal Proceeding, he *could* become liable for a debt arising from his criminal act. Based on the foregoing, this Court finds that the Criminal Proceeding could saddle Mr. Sinclair with a debt emanating from his sexual relationship with the Minor Child.

15

1.    If Convicted, Mr. Sinclair Faces a Potential Fine Pursuant to Texas Penal Code
§ 21.11(a)(1)

According to the incident report, Mr. Sinclair violated Texas Penal Code § 21.11(a)(1).
[Finding of Fact No. 3].  This violation is a second degree felony.  Tex. Penal Code Ann.
§ 21.11(d).  A second degree felony is punishable by imprisonment ranging from two to twenty
years and, in addition, "by a fine not to exceed $10,000."  Tex. Penal Code Ann. § 12.33(a)–(b).

Because Mr. Sinclair has been indicted for violating § 21.11(a)(1), [Finding of Fact No.
5], and his wife testified that she knew when he committed these sexual acts with the Minor
Child, [Finding of Fact. No. 11], this Court has reasonable cause to believe that he may be
convicted and punished with a fine.[6]  Should that happen, a debt would arise pursuant to Mr.
Sinclair's criminal act that resulted in serious physical injury to the Minor Child—circumstances
that fit within § 1328(h)(2) and thereby require this Court to deny Mr. Sinclair his discharge.[7]

2.    Furthermore, there is Reasonable Cause to Believe that the Minor Child May
Recover Restitution from Mr. Sinclair

Under the Texas Code of Criminal Procedure, the court that sentences the defendant may
also order the defendant to make restitution to any victim of the offense.  Tex. Code Crim. Proc.
Ann. Art. 42.037(a) (Westlaw Next 2015).  Restitution may be used as a punishment and it is
also the crime victim's statutory right.  *Hanna v. State*, 426 S.W.3d 87, 91 (Tex. Crim. App.
2014, pet. granted); *Burt v. State*, 445 S.W.3d 752, 756 (Tex. Crim. App. 2014) ("Restitution is a
victim's statutory right, and it serves a number of important purposes . . . [such as] . . . restor[ing]
the victim to the 'status quo ante' . . . , punish[ing] . . . the convicted criminal . . . [and] aid[ing]
in the rehabilitation process.").  In order to obtain restitution, the prosecuting attorney must

---

[6] Even if his wife had not given such testimony, this Court—by virtue of the indictment alone—would still have
reasonable cause to believe that Mr. Sinclair may be convicted and punished with a fine.

[7] A fine emanating from the Criminal Proceeding is a "debt" within the terminology of the Code.  11 U.S.C.
§§ 101(5), (12).

prove the amount of damages by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. Art. 42.037(k). When the victim suffers personal injury, the defendant makes restitution either to the victim for the expenses incurred because of the offense or to compensate victims of a crime fund equal to the amount that would have been paid to the victim. *Id.* at Art. 42.037(b)(2). Furthermore, Texas criminal courts favor a crime victim's compensation through a restitution remedy. *Burt*, 445 S.W.3d at 756 (stating this premise because the law requires the trial judge to justify a denial of restitution under Art. 42.037(a)); *see also* Tex. Code Crim. Proc. Ann. Art. 42.037(a). ("If the court does not order restitution or orders partial restitution under this subsection, the court shall state on the record the reasons for not making the order or for the limited order."). Additionally, restitution originating from a criminal proceeding is a "debt" within the terminology of the Code. 11 U.S.C. §§ 101(5), (12).

In this case, there is reasonable cause to believe that Mr. Sinclair may be required to pay restitution to the Minor Child. This is so because: (1) Mr. Sinclair currently faces an indictment involving serious physical injury to the Minor Child that is awaiting trial, [Finding of Fact No. 5]; (2) the Minor Child has given an extensive and detailed statement regarding Mr. Sinclair's sexual contact with her, [Finding of Fact No. 4]; and (3) Ms. Sinclair has testified that she knew when he committed these sexual acts with the Minor Child, [Finding of Fact No. 11].[8] Under these circumstances, this Court finds that there is reasonable cause to believe that a trial may be held and that Mr. Sinclair may be found guilty of the alleged crime. As such, Mr. Sinclair would be subject to a debt contemplated by § 1328(h)(2) that bars a Chapter 13 discharge. As stated previously, it is sufficient under § 1328(h)(2) merely for this Court to reasonably believe that such a debt could arise—the Court does not have to find that the debt will definitively be

---

[8] Even if his wife had not given such testimony, this Court—by virtue of the indictment and the Minor Child's detailed statement—would still have reasonable cause to believe that Mr. Sinclair may be convicted and be ordered to pay restitution.

imposed.  Based on the record, this Court has reasonable cause to believe that Mr. Sinclair may be required to pay restitution for his conduct with the Minor Child.

       3.       The Court has Reasonable Cause to Believe that Mr. Sinclair May be Liable for Debts Despite a Current Evaluation that Mr. Sinclair is Incompetent to Stand Trial

As articulated by the Supreme Court, the test to determine a person's competency to stand trial is whether the individual has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. U.S.*, 362 U.S. 402, 402 (1960). The State of Texas has adopted the same rule, but adds that a "defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." Tex. Code Crim. Proc. Ann. Art. 46B.003.

In the case at bar, the Evaluation sets forth that Mr. Sinclair is presently incompetent to stand trial. [Finding of Fact No. 6]. However, the Evaluation states that there is a likelihood Mr. Sinclair exaggerated his symptoms for purposes of the examination. [*Id.*]. Further, it also states that the examining physician believes Mr. Sinclair can become competent in the "foreseeable future" if he undergoes treatment. [*Id.*].

As stated previously, the standard for this Court is to determine if it is has *reasonable cause to believe* that Mr. Sinclair could face a debt arising from his criminal acts.  Because the examining physician explicitly states that Mr. Sinclair can be rehabilitated to undergo trial, there is indeed reasonable cause to believe that a trial in the Criminal Proceeding may eventually be held and that Mr. Sinclair could be found guilty for his conduct, and thus, incur debts (*i.e.*, a fine and/or restitution) from this suit.  Therefore, this Court concludes that Mr. Sinclair's present incompetency to stand trial does not prevent this Court from finding that there is reasonable

cause to believe that he could incur a debt from the Criminal Proceeding for his criminal acts that have caused serious bodily injury to the Minor Child.

## IV.   CONCLUSION

Typically, in granting a discharge in a Chapter 13 case, the focus is on whether a debtor has made all of his or her plan payments and taken the required personal financial management instructional course. However, BAPCPA added an additional requirement that must be satisfied even if a debtor has made all of his/her plan payments: the debtor must have avoided committing certain violent acts against other individuals during the pendency of the Chapter 13 case. Essentially, BAPCPA's message is that to receive a discharge, a debtor not only has to pay his/her creditors, but must lead a life that is free of causing serious physical injury to other individuals.

Here, Mr. Sinclair, together with his wife, has made all of the payments required under the confirmed plan in this case. However, during his Chapter 13 case, he has committed acts that lead this Court, pursuant to § 1328(h)(2), to find that there is reasonable cause to believe that there is pending a proceeding against him in which he may be found liable for a debt of the kind described in § 522(q)(1)(B). Specifically, this Court finds that as a result of the trial that could be held in the Criminal Proceeding, Mr. Sinclair could have to pay a fine to State of Texas or restitution to the Minor Child. Accordingly, under these circumstances, this Court cannot grant him the discharge that he requests.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

Signed on this 7th day of September, 2016.

Jeff Bohm
United States Bankruptcy Judge